FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2017 NOV 29 P 3: 30
CLERK'S OFFICE
AT GREENBELT
BY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Case No.: GJH-17-19 |
| NATHAN GORDON WILLIAMS, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In an indictment filed with the Court on January 18, 2017, the Government charges Defendant Nathan Gordon Williams with a violation of 18 U.S.C. § 664, which criminalizes theft or embezzlement from an employee benefit plan. ECF No. 1. Presently pending before the Court is Williams's Motion to Dismiss the Indictment, ECF No. 16. The Motion has been fully briefed, and the parties argued the Motion on November 20, 2017. ECF No. 34. For the following reasons, Williams's Motion to Dismiss is granted in part and denied in part.

## I. BACKGROUND[1]

According to the Indictment, from 1996 to 2012, Williams was the owner and chief executive officer ("CEO") of NW Systems, a government contractor. ECF No. 1 ¶ 2. To provide benefits to its employees, in 1999, NW Systems established a 401(k) Profit Sharing Plan & Trust Plan ("the Plan"). *Id.* ¶ 3. The Plan was an employee benefit plan subject to Title I of the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Employees could elect to have voluntary contributions deducted from their paychecks, which NW Systems was required to put into the Plan. *Id.* ¶¶ 3–4. NW Systems contracted with American United Life

---

[1] The background facts are taken from the Indictment, ECF No. 1.

Insurance Company ("AUL") to administer the Plan. *Id.* ¶ 5. In practice, employees would opt to have contributions withheld from their paycheck, which NW Systems would forward to AUL, who would deposit the money into the Plan's trust account. *Id.* ¶ 6. From June 2009 to March 2011, Williams was a co-trustee of the Plan; from March 2011 to February 2013, he was the sole trustee of the Plan. *Id.* ¶¶ 7–8.

The Government alleges that from January 9, 2010, through November 6, 2012, Williams stole money from the Plan by failing to transfer employee contributions from NW Systems' account to AUL, and subsequently used those funds to pay for his personal expenses and NW Systems' corporate expenses. *Id.* ¶ 10. In a separate matter, the Department of Labor filed a civil complaint against NW Systems and Williams alleging liability under ERISA for failure to properly execute the Plan. *Perez v. Williams, et al.*, No. 15-0056 (D. Md. Jan. 7, 2015), ECF No. 1. To resolve the civil claims against them, NW Systems and Williams entered into a Consent Order and Judgment ("Consent Order") with the Department of Labor on December 12, 2015. *Id.*, ECF No. 34. The Government brought the present Indictment against the Defendants over a year later on January 18, 2017. ECF No. 1.

On March 28, 2017, Williams filed the pending Motion to Dismiss the Indictment. ECF No. 16. Williams argues that the Indictment should be dismissed because: (1) the Government agreed to settle all claims against him when they entered into the Consent Order; and, (2) the Indictment contains allegations that fall outside of the statute of limitations. *Id.* at 1.[2] The Government filed an Opposition brief, ECF No. 30, to which Williams replied, ECF No. 33, and the Court heard oral argument from the parties on November 20, 2017. ECF No. 34.

---

[2] In his Motion to Dismiss, Williams also initially argued that certain essential evidence had been lost due to the Government's delay in bringing the Indictment. ECF No. 16 at 7. The Government subsequently produced additional discovery, causing Williams to withdraw this argument. ECF No. 33 at 1 n.1.

2

## II. DISCUSSION

### A. The Consent Order Between Williams and the Department of Labor

Williams argues that the Government is precluded from prosecuting him, because he entered into the Consent Order with the Department of Labor resolving the civil suit based on the same factual predicate. ECF No. 16 at 12.[3] Williams points to certain broad language in the Consent Order, and argues that this should bar any subsequent prosecution by the Government. *See, e.g., Perez*, No. 15-0056, ECF No. 34 at 2 (Consent Order resolving "all matters in controversy in this action"), 3 (resolving "all of the claims and issues" between the parties), 11 (resolving "all of the civil claims" contained in the Department of Labor's Complaint). Williams also cites to similar agreements in other cases in which the Government has expressly reserved the ability to bring criminal proceedings after entering into consent orders, *see* ECF No. 33-1, ECF No. 33-2, and argues that the failure to include similar language in the Consent Order here should lead to a finding that the Government is barred from now bringing a criminal proceeding against Williams. ECF No. 33 at 3. The Government responds that the Consent Order was limited to resolving the civil claims brought against Williams, and binds only the Department of Labor, Employee Benefits Security Administration. *See* ECF No. 30 at 2–3 (arguing that the Consent Order was a settlement "of <u>all civil claims and issues</u> between them <u>in this action</u>," which was not meant to bind "any governmental agency other than the United States Department of Labor, Employee Benefits Security Administration" (quoting *Perez*, No. 15-0056, ECF No. 34) (emphasis in original)).

This is a matter of contract interpretation, and the Court will therefore not look outside the four corners of the Consent Order unless the language is ambiguous. *See Johnson v.*

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

3

*Robinson*, 987 F.2d 1043, 1047 (4th Cir. 1993) ("Even given their distinctive character as agreements backed by the authority of the court, consent decrees are to be interpreted as contracts."); *NCO Financial Systems, Inc. v. Montgomery Park, LLC*, No. 11-1020, 2013 WL 6817629 at *5 (D. Md. Dec. 20, 2013) ("The parol evidence rule precludes parties from attempting to contradict written terms of an agreement through the use of prior oral or written declarations. Parol evidence is only admissible after the court finds the contract to be ambiguous." (internal citations and quotations omitted)). After a careful reading of the document, the Court concludes that the Consent Order was clearly limited to resolving the civil claims that the Department of Labor had brought against Williams, and was not intended to extend to future criminal claims or other government agencies, like the Department of Justice. At multiple times in the Consent Order, the parties limit the scope of the order to a settlement of all "*civil* claims and issues," *Perez*, No. 15-0056, ECF No. 34 at 1, 12 (emphasis added). The document further explains that "[n]othing in this Consent Judgment is binding on any governmental agency other than the United States Department of Labor, Employee Benefits Security Administration." *Id.* at 13. While it may be true that the Department of Labor assisted the Department of Justice in factual discovery for this prosecution, ECF No. 33 at 3, the Departments of Labor and Justice are separate governmental agencies, and the plain language of the Consent Order limited its scope to the Department of Labor. As such, the Consent Order signed by the Department of Labor does not bar the Department of Justice from bringing criminal charges against Williams.[4]

---

[4] Williams also argues that the principles of *res judicata* preclude the Government from bringing this prosecution. Williams explains that the Department of Labor's Regulations regarding Voluntary Compliance provide that the Department of Labor should not resolve an enforcement proceeding with voluntary compliance where the violations "involve potential fraud or criminal misconduct." ECF No. 16 at 16. Therefore, Williams argues that if the Department of Labor decided to enter into a voluntary compliance agreement with him, the Government should now be barred from asserting that his conduct involved "criminal misconduct." The Government points out in their Opposition, however, that "Mr. Williams did not resolve his issues with the Department of Labor through voluntary

## B. Statute of Limitations

Williams next argues that "[b]ecause the indictment alleges conduct that is outside the statute of limitations, it must be dismissed." ECF No. 16 at 19. The Indictment charges that between January 2011 and September 2012, Williams violated 18 U.S.C. § 664. ECF No. 1 at 4. However, the Indictment was not filed until January 18, 2017. *Id.* at 6. The parties agree that violations of § 664 are subject to a five-year statute of limitations, meaning that any violations of § 664 prior to January 18, 2012, would fall outside the statute of limitations. The parties disagree, however, on whether 18 U.S.C. § 664 can be considered a "continuing offense," and whether the Court should dismiss the Indictment if it indeed charges conduct falling outside the statute of limitations.

### i. Violations of 18 U.S.C. § 664 as a Single Continuing Offense

Generally, "[s]tatutes of limitations should not be extended 'except as otherwise expressly provided by law.'" *United States v. Smith*, 373 F.3d 561, 563 (4th Cir. 2004) (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)). Normally, "the statute of limitations will begin to run when a single criminal act is complete." *Id.* Criminal acts over an extended period, however, may be treated as a single "continuing offense" for limitations purposes "when a criminal statute explicitly compels that result, or if 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" *Id.* at 564 (quoting *Toussie*, 397 U.S. at 115). Where an offense is a continuing offense, the entire offense may be charged—even if some of the conduct occurred outside the statute of limitations—as long as part of the conduct falls within the statute of limitations. The Supreme Court has noted

---

compliance," making the voluntary compliance regulation irrelevant. Williams does not dispute this characterization in his Reply brief, and the Court concludes that the voluntary compliance regulation does not have any *res judicata* implications on the Government's prosecution.

5

that "the doctrine of continuing offenses should be applied in only limited circumstances." *Toussie*, 397 U.S. at 115.

18 U.S.C. § 664 prohibits any person from embezzling, stealing, or "unlawfully and willfully . . . abstract[ing] or convert[ing] to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith." The question before the Court is whether the violation of 18 U.S.C. § 664 alleged in the Indictment constitutes a "continuing offense." While the Fourth Circuit has not yet had the opportunity to opine on this question, multiple courts from other Circuits have addressed this issue, and have found that § 664 does not constitute a continuing offense. *See United States v. Duhamel*, 770 F. Supp. 2d 414, 416 (D. Me. 2011); *United States v. Rivlin*, No. 07-524, 2007 WL 4276712 (S.D.N.Y. Dec. 5, 2007). In applying *Toussie* to § 664, those courts found that "the *Toussie* test requires the Court to focus on the statute rather than the factual allegations in determining whether an offense qualifies as a continuing offense," *Duhamel*, 770 F. Supp. 2d at 416, and determined that "the embezzlement of money from an employee benefit fund is not *inherently* a prolonged course of conduct," *Rivlin*, 2007 WL 4276712, at *3 (emphasis in original).

Although the Fourth Circuit has not considered whether § 664 constitutes a continuing offense, it did have the opportunity to address a similar criminal statute in *United States v. Smith*, 373 F. 3d 561 (4th Cir. 2004). In *Smith*, the Government charged the defendant with violating 18 U.S.C. § 641, which prohibits any person from embezzling, stealing, or purloining "any record, voucher, money, or thing of value of the United States or of any department or agency thereof." There, the defendant did not report the death of his mother to the Social Security Administration ("SSA"), and continued to receive her monthly Social Security benefits. *Smith*, 373 F. 3d at 563.

While the final deposit of social security funds occurred within five years of the indictment—the length of the statute of limitations—earlier deposits that were charged in the indictment fell outside of the statute of limitations. *Id.* at 568. In finding that the violation of § 641 was a "continuing offense" and that the earlier conduct could properly be included in the indictment, the Fourth Circuit looked to the specific facts of the case before it, and reasoned that embezzlement "often occurs over some time and in relatively small, but recurring amounts." *Id.* at 567. The Fourth Circuit went on to explain that:

> At least in those cases where the defendant created a recurring, automatic scheme of embezzlement under section 641 by conversion of funds voluntarily placed in the defendant's possession by the government, and maintained that scheme without need for affirmative acts linked to any particular receipt of funds-cases in which there is a strong "temporal relationship between the [completion of the] offense and culpability," we think that Congress must have intended that such be considered a continuing offense for purposes of the statute of limitations.

*Id.* at 567–68 (quoting *United States v. Blizzard*, 27 F.3d 100, 103 (4th Cir.1994)).

The Court here applies the reasoning of *Smith*, but arrives at a different conclusion, as Williams's alleged violation of § 664 is distinguishable from the alleged violation of § 641 in *Smith*. In *Smith*, the defendant set up a "recurring, automatic scheme of embezzlement" where he could automatically illegally procure funds. *Smith*, 373 F. 3d at 564. Specifically, by failing to notify SSA of his mother's death, Smith demonstrated the "intent to establish a mechanism for the automatic and continuous receipt of funds for an indefinite period," and his continued receipt of funds from SSA violated § 641 without any additional conduct on his part. *Id.* But, here, Williams's continuous receipt of the funds itself was not the illegal act; he was entitled to possess the funds initially. What the Government contends was illegal was the fact that he allegedly failed to consistently send these funds along to AUL. Accepting the Government's allegations, every time he was required to send the contributions to AUL, he was confronted with a choice: he could properly send the contributions to AUL, or he could use some portion of the

7

money for unauthorized purposes. It appears from the summary chart provided at the hearing that he made different choices at different times, withholding different amounts and, according to the Indictment, using the funds for different purposes, from country club memberships to NW Systems's corporate expenses. Additionally, according to the Government's proffer at the motions hearing, it was Williams's repeated acts of taking money from the account where the funds were being held that would cause the shortfall when it came time for the funds to be transferred to AUL; thus, had he not taken that additional step each time, the violation would not have continued. As such, because affirmative acts were taken throughout the time of the alleged scheme, there was no "recurring, automatic scheme of embezzlement," and, pursuant to *Smith*, Williams's violations of § 664 were not a "continuing offense." Therefore, any conduct that occurred prior to January 18, 2012, falls outside the statute of limitations and cannot form the basis of an offense of § 664.

### ii. Dismissal of Indictment

Having determined that some of the conduct charged in the Indictment falls outside the statute of limitations, the Court is next confronted with the question of what to do with the Government's Indictment. The Government alleges that Williams committed violations of § 664 from January 2011 through September 2012. ECF No. 1 ¶ 13. Even having found that Williams's violations of § 664 were not a "continuing offense," the Government has still alleged that Williams committed violations of § 664 from January 2012 through September 2012, and any conduct occurring after January 18, 2012, would fall within the statute of limitations. The parties disagree as to what the Court should do regarding the alleged conduct that falls outside the statute of limitations (roughly half of the alleged conduct). Williams at times asks the Court to dismiss the entire Indictment, *see* ECF No. 16 at 17, and at other times argues that the Court only

"must dismiss the portion of the Indictment that alleges violations of § 664 before January 19, 2012." ECF No. 33 at 11–12 (citing *United States v. Duhamel*, 770 F. Supp. 2d 414, 417 (D. Me. 2011), and *United States v. Rivlin*, No. 07-524, 2007 WL 4276712, *5 (S.D.N.Y. Dec. 5, 2007)). The Government argues that even if the alleged violations do not constitute a continuing offense "the appropriate remedy is not dismissal," and "the Government should be permitted to seek a superseding indictment." ECF No. 30 at 10.

Williams has not identified any cases in which a court dismissed an Indictment entirely because some of the alleged conduct fell outside the statute of limitations. In *Duhamel*, which Williams cites in favor of dismissal of the Indictment, the court found that the offense charged was not a continuing offense, and that some of the conduct contained in the Indictment fell outside the statute of limitations. *Duhamel*, 770 F. Supp. 2d at 416. Rather than dismiss the indictment, however, the court concluded that "this time limit is not fatal to the pending Indictment," dismissed only those portions of the indictment alleging conduct outside the statute of limitations, and ordered the parties to "attempt to coordinate a redaction of the Indictment that complies with this ruling." *Id.* at 417. Similarly, in *Rivlin*—also cited by Williams in favor of dismissal of the Indictment—the defendant sought to dismiss parts of a one-count indictment for falling outside the statute of limitations. 2007 WL 4276712, at *1. After concluding that the alleged offense was not a continuing offense and that some of the charged conduct fell outside the statute of limitations, the court dismissed the parts of the indictment that fell outside the statute of limitations, and ordered that "[t]he Government may only prosecute the defendant for charged conduct that occurred within" the statute of limitations. *Id.* at *5. *See also United States v. Powell*, 99 F. Supp. 3d 262, 267–68 (D.R.I. 2015) (where pre-statute of limitations conduct

was alleged in the indictment, rejecting dismissal as a proper remedy and instead truncating the indictment).

Here, the Court orders that the Government may prosecute Williams only for violations that occurred within the statute of limitations period as described above, and dismisses those portions of the Indictment that allege conduct that occurred outside the statute of limitations. Within fourteen days of this Order, the Government shall either coordinate with Williams to redact the Indictment in compliance with this ruling, or return a superseding Indictment.

### III. CONCLUSION

For the foregoing reasons, Williams's Motion to Dismiss is granted in part and denied in part. A separate Order shall issue.

Date: November 29, 2017

GEORGE J. HAZEL
United States District Judge